77 F.3d 482
 152 L.R.R.M. (BNA) 2319
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
FORGINGS FOREVER, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
COMMERCIAL FORGINGS CO., Respondent.
 Nos. 94-6547, 94-6548.
 United States Court of Appeals, Sixth Circuit.
 Feb. 23, 1996.
 
 Before: KEITH and SILER, Circuit Judges, and GIBBONS, District Judge.*
 PER CURIAM.
 
 
 1
 This case is before the court upon a petition for review filed by Forgings Forever, Inc. ("Forgings"), a cross-application for enforcement filed by the National Labor Relations Board ("Board"), and the Board's application for enforcement filed against Commercial Forgings Company ("Commercial"). Forgings challenges the Board's finding that Forgings is the successor to Commercial and that as a result it is jointly and severally liable for the unfair labor practices of Commercial. For the reasons discussed below, this Court AFFIRMS the findings of the Board.
 
 I.
 
 2
 Commercial, an Ohio corporation, with an office and place of business in Cleveland, Ohio, operated an open die forging shop specializing in large forgings, related machining facilities, and a heat treating facility. For many years, Boilermakers Lodge 1086 ("Union") served as the collective bargaining representative of Commercial's production and maintenance employees. Commercial and the Union had entered into their most recent collective bargaining agreement on April 4, 1992. The agreement was to be in effect through April 3, 1993.
 
 
 3
 Over time, Commercial incurred a significant debt to a bank, Ameritrust Company National Association ("Ameritrust"). The loans were secured by various security interests and mortgages on the property of Commercial. In 1990, when Commercial was unable to meet its repayment obligations, Ameritrust directed it to sell its assets or face foreclosure.
 
 
 4
 Sometime in January or February, 1992, negotiations began between Commercial, Ameritrust, and the principals who later formed Forgings, concerning the sale of all or part of the assets of Commercial to Forgings. John Mencini ("Mencini"), chief executive officer and treasurer of Commercial and later president and treasurer of Forgings, was included in these negotiations. The asset purchase was finalized on May 15, 1992. On that same day, Mencini notified the Union that Commercial was ceasing business operations and told all of the employees of Commercial that they should gather their belongings and leave the premises.
 
 
 5
 The following Monday, May 18, 1992, Forgings began business operations at the Commercial facility. Forgings continued the same type of business operation as that conducted by Commercial, used the same physical facilities and the same equipment, and produced the same product. In addition, during the first four months of operations, 90 percent of Forgings' customers were the same as Commercial's.
 
 
 6
 When Forgings began operations, it employed nine individuals, all of whom except the chief financial officer had previously worked for Commercial. About a week after Forgings commenced operations, Union Representative, Steven Jewell, submitted a written grievance to Mencini alleging breach of the collective bargaining agreement in connection with Commercial's closing. Subsequently, the Union filed its charges with the Board.
 
 
 7
 On September 30, 1994, the Board found that Commercial violated §§ 8(a)(5) and (1) of the National Labor Relations Act by refusing to bargain with the Union concerning the effects of its decision to terminate its operations and by unilaterally modifying its collective bargaining agreement with the Union by failing to pay its unit employees the vacation and severance pay due under the agreement. The Board further found that Forgings was a successor employer to Commercial, and that therefore it had also violated §§ 8(a)(5) and (1) of the Act by refusing to recognize and bargain with the Union as the exclusive bargaining representative of its unit employees. The Board's order determined that Forgings, since it assumed control of Commercial's business with knowledge of its unfair labor practices, was jointly and severally liable (along with Commercial) for remedying the labor violations.
 
 
 8
 The Board ordered Commercial and Forgings to cease and desist from all unfair labor practices and to recognize the Union as the collective bargaining representative of its employees. In addition, the Board ordered Commercial and Forgings to jointly and severally: (1) make whole the bargaining unit employees for any losses that they may have suffered as a result of Commercial's failure to bargain with the Union over its termination; (2) make all contractually required severance and vacation pay benefits (with interest) due under the collective bargaining agreement; and (3) post at Forgings, and mail to all unit employees employed at the time of Commercial's closing, a remedial notice.
 
 
 9
 Forgings filed its petition for review of the Board's order on October 24, 1994, and the Board's cross-application and application for enforcement were filed on December 5, 1994.
 
 II.
 
 10
 Pursuant to § 8(a)(5) of the National Labor Relations Act, it is an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." It is settled law that an employer can violate this provision of the Act by refusing to bargain in a meaningful manner over the effects of a decision to terminate operations. See First National Maintenance Corp. v. NLRB, 452 U.S. 666, 681-82 (1981). In addition, a violation of § 8(a)(5) results in a "derivative" violation of § 8(a)(1) of the Act, which provides that it is an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of the[ir] [statutory] rights." See NLRB v. Newark Morning Ledger Co., 120 F.2d 262, 265 n. 1 (3d Cir.), cert. denied, 314 U.S. 693 (1941).
 
 
 11
 It is important to note that in this instance, Commercial's liability for violating §§ 8(a)(5) and (1) was not contested before the Board and is not contested before this Court. Instead, Forgings' sole contention is that Forgings is not a successor to Commercial.
 
 
 12
 In NLRB v. Burns Intl. Security Services, 406 U.S. 272, 279 (1972), the Supreme Court determined that an employer could be a "successor" to a previous employer's bargaining obligation when the bargaining unit remained unchanged and a majority of the employees hired by the new employer had been represented by the union. Subsequently, in Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27 (1987), the Supreme Court discussed in more detail the factors that are important in determining whether "substantial continuity" exists between two enterprises to render one company a "successor" to another's bargaining obligation. The Court found the following factors relevant:
 
 
 13
 [W]hether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers.
 
 
 14
 Id. at 43. In addition, the Supreme Court noted that a determination of "substantial continuity" should be based on the totality of the circumstances of a given situation and that a strong emphasis should be placed on whether the employees of the new company viewed their "job situations as essentially unaltered." Id. (quoting Golden State Bottling Co. v. NLRB, 414 U.S. 168, 172-73 (1973)).
 
 
 15
 A decision by the NLRB that one company is a successor to another is entitled to deference and will be upheld by this Court as long as it is based on substantial evidence in the record. Fall River, 482 U.S. at 30. In this case, there is ample evidence to support the Board's finding of substantial continuity. Forgings acquired all of the assets of Commercial except for its real estate holdings. Forgings continued the same type of business operation as Commercial, used the same facilities and equipment as Commercial and produced the same product. Moreover, eight of nine individuals employed by Forgings had previously worked for Commercial and 90 percent of Forgings' customers during its first four months of operation had previously been customers of Commercial. Finally, Forgings' job classification for the majority of its production employees was substantially the same. Thus, there was substantial evidence to support the Board's finding of substantial continuity between Commercial and Forgings.
 
 
 16
 Due to Forgings' status as a successor to Commercial, the Board ordered Forgings to remedy the unfair labor practices of Commercial that it was aware of when it purchased Commercial's assets. See Golden State Bottling Co. v. NLRB, 414 U.S. at 184-85. As the Board aptly noted, Mencini, the president of Forgings and former CFO of Commercial, was personally involved in the labor violations committed by Commercial. Consequently, it was reasonable to impute his knowledge to Forgings and conclude that Forgings should have been held jointly and severally liable for Commercial's unfair labor practices.
 
 Conclusion
 
 17
 Accordingly, this Court AFFIRMS the decision and order of the National Labor Relations Board in its entirety.
 
 
 
 *
 The Honorable Julia S. Gibbons, Chief Judge of the United States District Court for the Western District of Tennessee, sitting by designation